Good morning, Your Honor. Jonathan Milberg for Petitioner Appellant Mendoza. May it please the Court, the issue here is whether the failure of defense counsel in the California Trial Court to adequately explore and resolve the defendant's mental competency before allowing him to plead guilty and consign himself to 25 years in state prison violated his due process rights. I want to take a moment before going into the specific specifics of this case to indicate why I think this problem arises so often, particularly in California. And there's really two factors. One is that unlike in federal court, there is really no meaningful colloquy in the plea hearing. The defendant is not asked to articulate specifically the factual basis for his crime. You just don't have the interchange between the judge taking the plea and the defendant. And as a result, nothing in the plea hearing gives us any clue as to whether or not the defendant understood what he was doing. He was represented by counsel, wasn't he? Sure. And his lawyer didn't say anything? Sure. And that's true in every single one of these cases. I don't know about every single one, but in this case, you have a guy who's standing there with his lawyer, and the lawyer doesn't bring anything to the judge's attention about the defendant. And that's a large part of the problem. Well, maybe because there's nothing to bring to the judge's attention about. Well, defense counsel has an independent duty to explore the issue of mental incompetency if there's any serious doubt. And part of our claim, of course, is that counsel was at fault for not calling this to the court's attention. How do you know counsel didn't satisfy himself that Mr. Mendoza was competent? The only clue we have in this record is the later hearing on the motion to withdraw the plea. And from that, it strongly appears that what counsel did, he had a client who was facing a lot of time in state prison. He had a plea bargain offer on the table where the client would do 25 years instead of 61. So counsel talks to the defendant's family, and then, according to the affidavits presented at that hearing, falsely tells the defendant, your family wants you to take the plea. That's the only clue we have, really, as to what counsel did other than his own self-serving statements at the hearing. Everything else, at least circumstantially, points to a total failure of counsel to explore this issue. Counsel never requested a mental competency evaluation, even though he'd entered a not guilty by reason of insanity plea for the defendant. Well, I thought the second psychiatrist that examined him prior to the plea was hired by the defendant, so am I mistaken? You're correct, but not to explore the defendant's mental competency. They focused their reports and their evaluations solely on the issue of whether he was legally insane, whether there was a viable insanity defense. The only psychiatrist who ever addressed whether the defendant was mentally competent was Dr. Irwin in his report several years later, which was part of the basis of the habeas corpus action. No, there was no exploration of the mental competency issue by defense counsel or the trial court whatsoever, and there should have been. We have a situation where the defendant is severely mentally ill. The facts of the crime in and of themselves indicate a mental illness problem. We have a not guilty by reason of insanity. mentally ill because the facts that you can make that argument, but that's not something that's going to come to the attention of court, is it? That's one of many factors. If it was that alone, I wouldn't be making the argument. My point is that all the factors collectively should have sent off flashing red lights in counsel's and the trial court's brains. This had to be explored further. One of the factors, and it's a factor that has caused a reversal on habeas corpus in numerous cases decided by this court, is the effect of the administration of these psychotropic drugs. As Dr. Sharma said in his report, the Los Angeles County Jail has a distressing tendency to really overly heavily medicate people who have mental problems because they want to prevent defendants from acting out and causing problems in the jail and in court. What happened here is that, as noted in the court, even counsel's statement of the court proceedings, the defendant was really heavily medicated and respondent makes the argument that that was a hearing two months before the plea. But the problem with that is that the jail records indicate that they continued during that two-month period to give him all of these sedative drugs. And I don't think it's an exaggeration to say this man at the time of the plea is just a walking zombie. He doesn't understand anything that's going on. Why would you base that on? Because, first of all, Dr. Irwin said that it would be impossible for a man who was under the effects of these drugs to really understand it. Secondly, I'm assuming drugs have different effects on different people. I know the ones that I've had to take over the years have. Am I correct that the entire amount of time that Mr. Irwin spent with the appellant was 3.5 hours, as stated in his letter? The statement is correct, technically, but there's more to it than that. First of all, I know he reviewed the records. Yes, very carefully. And the records showed that the defendant had been administered all of these drugs. And Dr. Irwin, as a psychiatrist, based on his experience and his knowledge, knew what the effect of the cocktail of these drugs was. And Mr. Mendoza is hardly, with all due respect, in the position of Your Honor. So even though, if Your Honor was being given certain drugs, I'm sure that, given the mind that Your Honor has, it might not have the effect that it would. But on somebody like Mr. Mendoza, uneducated, suffering severe mental illness, having gone through the trauma of this event, and in county jail and being taken to court and being told, hey, your family wants you to take the deal, I suggest that it might have, in fact, all the indications in the record are it probably did have a different effect. And to not even explore that issue before allowing somebody like Mr. Mendoza to go ahead and plead guilty and consign himself to a quarter century in state prison, I think, is unforgivable, in effect, of assistance of counsel. Did you want to reserve some time, Mr. Miller? Yes. You don't have to. If you don't want to, you've got a minute and a half left. You can use it all now or reserve it. I'll reserve it. Thank you. Good morning. Good morning, Your Honor. May it please the Court, Deputy Attorney General Allison Chung for respondent of the plea. Federal habeas relief may not be granted in this case because the state court's decision wasn't contrary to or involved in unreasonable application of clearly established Supreme Court law. There was absolutely no evidence before the trial court that raised a reasonable doubt as to whether Petitioner was competent to enter a valid no contest plea. And the pre-plea medical reports that Petitioner's counsel alluded to certainly didn't raise a doubt as to Petitioner's competency. And there's certainly no evidence that the trial court had reviewed either of those reports prior to accepting Petitioner's no contest plea at the July 2001 hearing. First, there's nothing in the record suggesting that Petitioner was in a confused or altered mental state due to any medication or any other cause. At the time he entered his no contest plea, he completed his form, his plea form, and answered the questions appropriately to the court's satisfaction. And his answers show that his plea was knowing, voluntary, and intelligent. And there's absolutely nothing in the record that indicates that he was sluggish or he experienced difficulty in filling out the waiver form, as Petitioner alleges, or that his trial counsel spent any substantial amount of time trying to get Petitioner to complete the form itself. And importantly, neither the prosecutor, defense counsel, or the trial court ever expressed any doubt about Petitioner's competence during the plea proceedings. And as Petitioner's counsel mentioned that Petitioner was heavily medicated during his plea of not guilty by reason of insanity, there is absolutely no evidence that he was so heavily medicated that he was incapable of understanding his plea two months later on July 10, 2001. And the two medical reports, the two pre-plea medical reports that were generated in this case, although counsel is correct that they weren't generated for purposes of exploring competency, they did reveal significant things about Petitioner's mental state close in time to his plea. They show that he had no history of mental illness, and he didn't have any past arrest or antisocial criminal behavior. And he denied having any auditory hallucinations, as mentioned in Dr. Irwin's retrospective report. And he also denied having any suicidal or homicidal ideation, thought, or plans. And in fact, he told Dr. Arroyo that he was ready to go to court. And there's nothing in either of the reports that indicate that he was incompetent or had any mental health issues that would prevent him from entering a valid no-contest plea in this case. What is the standard here, Ms. Chung, that we're reviewing the failure to give him a competence exam before entering his plea? It's not, we're not trying to decide whether he was or was not competent, or competent, excuse me, but what is the precise standard? Well, if there's substantial evidence that would raise a doubt as to whether he could rationally understand the proceedings in a rational manner or that he was, he was capable of rationally assisting his counsel at the time of trial or in this case. Well, now that would be evidence presented to the judge that the judge was aware of at the time he accepted the plea. Is that correct? That's correct, Your Honor. And that's what we're limited to. That's correct. And although counsel mentioned the jail records that would have showed his continued use of medication up to the point of his plea, those records were not submitted in the district court and were not presented in the excerpt, so they should not be considered in this case. In any event, as the two medical reports by Dr. Sharma and Dr. Arroyo show, any medication that he was prescribed and was taking at the time clearly didn't have an effect on his mental state at the time that he entered the plea. And unless the Court has any further questions, I'm prepared to submit on the briefs. Do you maintain the procedural bar argument? Yes. I would just submit on the procedural bar issue since it was not considered by the district court below. Thank you. Mr. Gilbert, you've got the last word. First of all, for the response to the last question, the Court is not limited to the information before the trial court at the time of the plea. I refer the Court to the Deere case in which an evidentiary hearing was granted. In a death penalty case, no less, based upon a, quote, and is not limited to what was before the California trial court at the time of the plea. This Court can consider, or the California trial court could consider something submitted later. Are you saying this Court can consider that? This Court can and did in the Deere case, and in the Deere case granted an evidentiary hearing on this issue based upon the report of the psychiatrist 11 years later, and as far as I can tell, almost nothing else. Secondly, it's not at all surprising that, as in most of these cases, counsel in the court said nothing. That's the whole problem. The whole issue is whether, despite evidence suggesting mental incompetency, counsel in the court failed to do their duty. If it was anything else, then we could never raise a claim of mental incompetency, you know, on habeas. And I'll submit it. Thank you, Mr. Gilbert. Ms. Chung, thank you, too. The case just argued is submitted. Thank you. Good morning. Taranoff v. Superior Court, United States v. Perez-Muginez, United States v. Medina, Tenseño are submitted on the briefs at this time.
judges: Camp, Farris, Silverman